UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BLAINE JACKSON, SR., <br><br> Plaintiff, <br><br> v. <br><br> ASH CARTER, <br> U.S. DEPARTMENT OF DEFENSE, <br><br> Defendants. | Civ. No. 16-8968 (KM) (MAH) <br><br> OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

The *pro se* plaintiff, Blaine Jackson, Sr., was employed by the Defense Management Contract Agency ("DCMA") at Picatinny Arsenal for four months until he was dismissed in June 2013. He brings this action against (former) Secretary of Defense Ash Carter, as well as the United States Department of Defense ("DOD"). I interpret the Complaint ("Cplt.," ECF no. 1-1) as asserting claims of (1) racial discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; (2) disability discrimination under the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.*;[1] and (3) a violation of the Privacy Act of 1974, 5 U.S.C. § 552a.

Defendants move under Fed. R. Civ. P. 12(b)(6) to dismiss claims (2) and (3), *i.e.*, disability discrimination and violation of the Privacy Act, for failure to

---

[1] Plaintiff sued for disability discrimination under the Americans with Disabilities Act of 1990 ("ADA"). The federal government, however, is not a covered employer under the ADA. 42 U.S.C. § 12111(5)(B)(i). *See also Smith v. Pallman*, 420 F. App'x 208, 214 (3d Cir. 2011); *Marley v. Donahue*, 133 F. Supp. 3d 706, 720 (D.N.J. 2015). The Rehabilitation Act provides a similar cause of action against federal agencies, and the plaintiff now acknowledges that it is the proper basis for his disability discrimination claim. *See* Pl. Opp. at 3 (ECF no. 27).

1

state a claim upon which relief may be granted.[2] The plaintiff cross-moves for partial summary judgment on claim (1), *i.e.,* racial discrimination.

I. **DISCUSSION**

A. **Standard on a Rule 12(b)(6) Motion**

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss, a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) ("reasonable inferences" principle not undermined by later Supreme Court *Twombly* case, *infra*).

Fed. R. Civ. P. 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual

---

[2] To be clear: Defendants inferred that the complaint might have been asserting certain other causes of action as well, and moved to dismiss them. It is now clear that the plaintiff does not intend to assert a class action claim of racial discrimination or a claim of age discrimination.

Thus the defendants, in their motion, raised arguments for dismissal of a "pattern or practice" class action claim of racial discrimination. The plaintiff acknowledges that he was not making such a claim. See Pl. Opp. 8 (ECF no. 27). The motion to dismiss any such class action claim is therefore moot.

Defendants' motion also raised arguments for dismissal of a claim of age discrimination under the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq.*. The plaintiff acknowledges that he does not intend to assert a claim of age discrimination. See Pl. Opp. 4 (ECF no. 27). The motion to dismiss the age discrimination claim is thus moot.

2

allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678 (2009).

Where, as here, the nonmoving party is appearing pro se, "the court has an obligation to construe the complaint liberally." *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009) (citing *Haines v. Kerner*, 404 U.S. 519, 520–521, 92 S. Ct. 594 (1972); *Gibbs v. Roman*, 116 F.3d 83, 86 n.6 (3d Cir. 1997)). I have construed the Complaint in that liberal spirit.

### B. Title VII Racial Discrimination/Plaintiff's Cross Motion

After his dismissal, Mr. Jackson filed an administrative complaint against the DCMA with the Equal Employment Opportunity Commission ("EEOC"). He alleged that he had been subjected to racial discrimination, as well as disability discrimination. That administrative claim was denied.

The current federal-court complaint states that Mr. Jackson is an African-American male. He alleges that he was employed by DCMA as a Contract Administrator from February 11, 2013 to June 11, 2013. His supervisors, Ms. Leap and Ms. Kowalski, were both Caucasian. The complaint alleges that the supervisors treated Mr. Jackson less favorably than they did a similarly situated Caucasian employee, Justin Fenerty, with respect to several matters. These included training, assignments, permission to go on a business trip, and performance reviews. (Cplt. ¶¶ 13–19) The Complaint also alleges another, roughly contemporaneous complaint of racial discrimination against Leap, presumably as circumstantial evidence of her racially discriminatory intent. (Cplt. ¶ 20)

3

Defendants do not move to dismiss this Title VII racial discrimination claim. Mr. Jackson, however, has cross-moved for summary judgment on that Title VII racial discrimination claim.

Plaintiff's summary judgment motion will be denied as premature. There has been no discovery; indeed, the defendants have not yet even answered the Complaint, as their partial motion to dismiss has suspended the time to answer. *See* D.N.J. Loc. Civ. R. 12.2. This denial of the plaintiff's summary judgment motion, however, is without prejudice. I am ordering that, as is the usual practice in this District, any summary judgment motions will be filed and heard on a schedule to be set by the Magistrate Judge. *See generally* Fed. R. Civ. P. 56(b). Generally that occurs at the completion of fact discovery.

### C. Disability Discrimination under the Rehabilitation Act

Mr. Jackson's second claim is one of disability discrimination under the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq*. Rehabilitation Act claims against federal employers are, by statute, analyzed in the same manner as claims under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the case law for one may be used to interpret the other. *See* 29 U.S.C. § 791(g); *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 282-83 (3d Cir. 2012) (holding that "the substantive standards for determining liability under the Rehabilitation Act and the ADA are the same").[3]

To make out a prima facie case, a plaintiff must allege "that (1) he is disabled within the meaning of the [Rehabilitation Act]; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment [action] as a result of discrimination." *Wilkie v.*

---

[3] I therefore from time to time will cite ADA case law, substituting the Rehabilitation Act in brackets. As noted above, n.1, Mr. Jackson acknowledges that his ADA claim is properly asserted under the Rehabilitation Act, and I analyze it on that basis.

4

*Luzerne Cty.*, No. 3:14CV462, ___ F. Supp. 3d ___, 2016 WL 4803762, at *3 (M.D. Pa. Sept. 14, 2016) (citing *Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996)); *see also Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir.2000)); *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010).

Elements (1) and (2) are not at issue here. Mr. Jackson alleges that he wears a prosthetic left leg (Cplt. ¶¶ 1, 7), and the defendants (for purposes of this motion, anyway) do not dispute that this is a covered disability. The defendants also accept that Mr. Jackson has adequately alleged that he was qualified for his position.

Rather, the defendants concentrate on element (3). They say that Mr. Jackson's complaint contains no sufficient allegation that he suffered an adverse employment action *as a result* of disability discrimination. By a "sufficient" allegation, I mean one that is plausible and factual in nature—*i.e.*, one that meets the standards of *Iqbal* and *Twombly*. *See* Section II.A, *supra*.

I therefore review the allegations of the Complaint that might potentially relate to Mr. Jackson's disability.

At the outset, the Complaint lumps together allegations of race and disability discrimination. It states that Mr. Jackson's employer "discriminated against him by

> (a) not fully training him as they did a new male Caucasian employee,
>
> (b) not providing the same computer access to computer system as a new male Caucasian employee,
>
> (c) denying Plaintiff a visit to a contractor's facility for observation and training,
>
> (d) giving Plaintiff an alleged work performance review after three (3) weeks of training even though Plaintiff did not have the same (i.e. a thru d) as a new male Caucasian employee...."

(Cplt. ¶ 1; line breaks added to separate items (a) – (d)) The implication is that this treatment set him up for failure and dismissal.

Items (a) and (b) focus on Ms. Leap, who was Jackson's supervisor, and Ms. Kowalski, to whom she delegated direct responsibility for training Jackson. These allegations (which compare Jackson's treatment to that of a "new male Caucasian employee") allege race, not disability, discrimination.

As to Ms. Leap, the Complaint alleges clearly that "[t]he *only* reason why Ms. Leap did not assign Plaintiff a trainer when he started as she did for Mr. Fenerty is because Plaintiff is African-American." (Cplt. ¶ 13; emphasis added) *See also* Cplt. ¶ 14 (alleging that Ms. Leap sought "[t]o cover up the procedural differences in the assignment of trainer/mentor between the two (2) new employee(s), one African-American male and one Caucasian male" and that her training procedures reflected "preferential treatment geared towards the new Caucasian male employee, Mr. Fenerty").

As to Ms. Kowalski, the allegations likewise focus on race. The Complaint alleges that she did not give Jackson the full level of training and access to the Contract Management team ("CMT") and a "specific CAGE Code"[4] that she gave "the new Caucasian male employee, Fenerty." It alleges that the "Caucasian ACO trainer, Ms. Kowalski, … request[ed] that the new Caucasian male employee, Mr. Fenerty, be placed on CMT and assign to 'specific a CAGE Code'" nine days after he was hired, while taking 22 days to do the same for Jackson. (Cplt ¶ 16) At the end of the paragraph, Mr. Jackson states that he "can only conclude that she, Ms. Kowalski, did not want Plaintiff to become successful due to his race, African-American and disability." (*Id.*) Those two final words—"and disability"—are the only reference to disability; no *facts* suggesting disability-based discrimination are alleged at all.

In the following paragraph, the Complaint returns to calling Ms. Kowalski's statements "a pretext for racial discrimination." (Cplt. ¶ 17) Indeed, although the Complaint alleges that Fenerty, Kowalski, and Leap are

---

[4] These paragraphs of the complaint contain an alphabet soup of abbreviations and acronyms. The item (b) claim of denial of access to a computer system is hard to situate; the "CAGE Code" may be it.

Caucasian, it does not even specifically allege that they were not disabled, or that they bore any discriminatory animus against disabled persons. One stray, conclusory reference to disability is insufficient to support a claim.

I proceed, then, to item (c) (Cplt. ¶ 18). The complaint alleges that there was a business trip to a contractor's facility for the purpose of observation and training. "Miss Danielle Kalendowicz, an A.C.O., Ms. Denise Gurrero, Plaintiffs' co-worker, and Mr. Fenerty attended"; Jackson allegedly was "denied the opportunity to attend." (Cplt. ¶ 18) The trip occurred during the week of June 16 or June 23, 2013. (Confusingly, this would seem to date from after Mr. Jackson's June 11 dismissal. He also seems to concede that he is unable to confirm independently that the trip even occurred.) (Cplt. ¶ 18) The complaint contains just one allegation of discrimination with respect to this trip: "Plaintiff can only surmise as to the reason he did not attend this business trip, his race and disability." (*Id.*) It contains no facts suggesting that disability discrimination was involved.

Finally, I review item (d), Mr. Jackson's complaint that he "received an alleged work performance review." (Cplt. ¶ 19) He objects that Ms. Leap could not fairly appraise his work, because she supervised him only indirectly; that, subtracting training time, he had had only three weeks to learn the job; and that he was held to a higher standard vis-à-vis Fenerty, "the other new Caucasian employee." Once again, Mr. Jackson offers nothing factual that would plausibly support an inference that his disability had any bearing on the situation. Again, he offers speculation: "Plaintiff can only surmise as to the reason he received an alleged work performance review, his race and disability." (Cplt. ¶ 19)

To begin with, there is reason to doubt that these actions constituted adverse employment actions at all. "An 'adverse employment action' is an action that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" *Budhun v. Reading Hosp. & Med.*

*Ctr.*, 765 F.3d 245, 257 (3d Cir. 2014) (citing *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997)). Exclusion from a (post-dismissal, apparently) business trip probably does not suffice. Being subjected to a performance review, too, is an ordinary incident of employment, even if the plaintiff believes it was excessive or intrusive.[5]

More to the point, there is not the slightest factual allegation of causation, *i.e.*, a connection between the plaintiff's disability and these employment actions. As to race, there is at least an allegation, and the Complaint contains some factual context from which an inference might be drawn. As to disability, however, the Complaint alleges nothing more than the fact that plaintiff wears a leg prosthesis and the fact that he was subjected to certain unsatisfactory conditions at work. There are literally no factual allegations at all to indicate that his disability played a role in his supervisors' decisions. The Complaint offers nothing more substantial than speculation: "Plaintiff can only surmise...." That is not enough. While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a

---

[5] *See, e.g., Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1301 (3d Cir. 1997) (holding that plaintiff's claim that she was subjected to "'unsubstantiated oral reprimands' and 'unnecessary derogatory comments' following her complaint do not rise to the level of the 'adverse employment action" in a Title VII retaliation claim); *Cortazzo v. City of Reading*, No. 14-CV-2513, 2016 U.S. Dist. LEXIS 32915, at *13-14 (E.D. Pa. Mar. 15, 2016) (dismissing Rehabilitation Act claim because, inter alia, for failure to allege an adverse employment action, where plaintiff, a police officer, claimed that he suffered discrimination when he was forced to undergo an "involuntary fitness-for-duty exam" because he "makes no allegation that the produced any injury or harm").*DeLuzio v. Family Guidance Ctr. of Warren Cty.*, No. CIV.A.06-6220FLW, 2010 WL 1379766, at *14 (D.N.J. Mar. 30, 2010) ("complaints of 'micromanaging,' 'increased scrutiny,' and 'reprimands about plaintiff's lateness,' would not rise to the level of materially adverse actions"); *McKinnon v. Gonzales*, 642 F. Supp. 2d 410, 428 (D.N.J. 2009) ("courts have consistently found that an employee's perception that he has been micro-managed, criticized, or scrutinized by his supervisor fails to rise to the level of" even the lower standard of "*material* adversity" applied to retaliation claims); *Lester v. Natsios*, 290 F. Supp. 2d 11, 30 (D.D.C. 2003) ("in any event, being closely supervised or 'watched' does not constitute an adverse employment action that can support a claim under Title VII") (collecting cases).

sheer possibility." *Iqbal*, 556 U.S. at 678 (2009). No more than a possibility of disability discrimination is alleged here.

Under such circumstances, a discrimination claim will be dismissed. *See Lopez v. Beard*, 333 F. App'x 685, 687 (3d Cir. 2009) ( "[w]hile [plaintiff] claims that he has been subject to 'prejudice, discrimination and retaliation at' at the hand of certain defendants, . . . he does not offer any specifics about these alleged incidents which would permit a court to reach the conclusion that they were discriminatory"); *Catalano v. Twp. of Upper Freehold*, No. 12-6393, 2013 U.S. Dist. LEXIS 155508, at *14, (D.N.J. Oct. 30, 2013) (complaint failed to "set forth factual allegations that, if proven, would justify" the characterization of the acts as wrongful, and dismissing the Complaint); *Townsend v. N.J. Transit & Amalgamated Transit Union*, No. 09-CV-1832, 2010 U.S. Dist. LEXIS 103451, at *9-10 (D.N.J. Sept. 27, 2010) (dismissing pro se plaintiff's claim under the Rehabilitation Act where plaintiff "failed to state a plausible claim to relief"). Even the liberal interpretation given a *pro se* complaint cannot save these allegations.

The second claim, alleging disability discrimination under the Rehabilitation Act, is therefore dismissed.

### D. Privacy Act Violation

Mr. Jackson's Complaint alleges that "the DCMA EEO[ ] office has violated the Privacy Act of 1974." (Compl. ¶ 21). According to the Complaint, the improperly disclosed information was contained in the Record of Investigation (ROI) of his EEO complaint. It seemingly related to Jackson's desire to take a job-related training course, *i.e.*, "Defense Acquisition University . . . training." *Id.* Mr. Shannon Sacra, apparently an EEO representative, allegedly disclosed this information to Jackson's former supervisor Ms. Leap.

It is true, as defendants say, that the improperly disclosed information must have been contained in a "system of records," and that the disclosure must have had "an adverse effect," 5 U.S.C. § 552a(g)(1)(D). I will state frankly

that, if this claim had been filed by an attorney, it would merit dismissal for failure to meet *Twombly/Iqbal* pleading standards. Granting this *pro se* Complaint a liberal reading, however, I can discern the outlines of a claim, which is that the contents of the ROI were confidential, but were released. The Complaint seems to suggest that there was an adverse effect on Mr. Jackson's litigation position in the EEOC proceedings. [6]

Some portion of this case is going forward in any event. There will be time enough to deal with these Privacy Act issues, whatever, they may be, with the clarifying benefit of a factual record, on summary judgment. As to the Privacy Act claim, then, the motion to dismiss is denied.

### III. Conclusion

For the reasons set forth above, the motion to dismiss (ECF no 26) is GRANTED IN PART and DENIED IN PART, as follows:

    (a) the defendants' motion to dismiss claim (2), disability discrimination under the Rehabilitation Act, is GRANTED;

    (b) the defendants' motion to dismiss claim (3), violation of the Privacy Act, is DENIED; and it is further

ORDERED that the plaintiff's cross-motion for summary judgment on claim (1), Title VII racial discrimination (ECF no. 28), is DENIED.

The dismissal of claim (2) is without prejudice to the submission of a proposed amended complaint that remedies the deficiencies identified in the accompanying Opinion, within 30 days. The denial of the plaintiff's cross-motion for summary judgment on claim (1) is without prejudice to renewal on a schedule to be set by the Magistrate Judge when appropriate discovery is completed.

For clarity, the claim that remains is claim (1), racial discrimination under Title VII, 42 U.S.C. § 2000e *et seq.*

---

[6] In his brief, Mr. Jackson adds that the disclosure caused him other kinds of harm, including emotional harm. Although statements in briefs do not serve to amend a complaint, this does suggest that a liberal reading is not futile or uncalled-for.

An appropriate order follows.

Dated: June 5, 2017

_____
HON. KEVIN MCNULTY, U.S.D.J.